# United States District Court
## Northern District of Alabama
## Western Division

Scott Brenizer,                    ]
                                   ]
    Plaintiff,             ]
                                   ]
vs.                                ]    CV-01-N-2334-W
                                   ]
Purdue Pharma, L.P., et al.,       ]
                                   ]
    Defendants.            ]

## Memorandum of Opinion

### I.   Introduction

Before the court is the plaintiff's motion to remand [Doc. #16], filed October 16, 2001. The issues have been briefed by all parties and are now ripe for decision. Upon due consideration, the motion will be granted.

### II.   Facts

Plaintiff Scott Brenizer filed this suit in the Circuit Court of Tuscaloosa County, Alabama on August 9, 2001, alleging numerous causes of action against the defendants growing out of his alleged addiction to OxyContin, a federally controlled, Schedule II prescription medication that is approved for use in the management of moderate to severe pain. Among the defendants is Dr. Wesley Spruill, an Alabama resident and the physician who prescribed OxyContin to plaintiff. Others are Purdue Pharma L.P., Purdue Pharma, Ltd., Purdue Frederick Company, Abbott Laboratories, and Abbott Laboratories, Inc. (collectively referred to as "the drug company defendants"). The plaintiff asserts that at all times relevant to this action, the drug company defendants were in the business of designing, testing,

manufacturing, labeling, advertising, promoting, marketing, selling, and/or distributing OxyContin. He claims that on or about April 25, 2000, he sought treatment from defendant Spruill for continuing severe back pain. Spruill prescribed OxyContin even though the plaintiff was then taking Xanax incident to an earlier kidney removal. Plaintiff alleges that OxyContin is contraindicated for patients currently taking Xanax and that he had advised Dr. Spruill and his staff of the fact that he was then taking Xanax during his initial office visit with Dr. Spruill. As a result of this prescription, plaintiff alleges that he became addicted to OxyContin.

According to the plaintiff: Since its approval in 1996, OxyContin sales have rapidly increased. The enormous sales volume of OxyContin is due primarily to the defendants' aggressive marketing strategy to physicians, pharmacists, and patients. That strategy relies heavily on highly coercive tactics, misrepresentations of the appropriate uses of OxyContin, and the failure to adequately disclose and discuss the safety issues and possible adverse effects of OxyContin use. Similarly, sales representatives of the drug company defendants use highly coercive and inappropriate tactics to attempt to influence physicians and pharmacists to prescribe and recommend OxyContin and fill prescriptions for OxyContin, often when its use is inappropriate. As a result of these and other marketing tactics, OxyContin has rapidly become a widely used painkiller.

The complaint includes ten counts: negligence in the manufacturing, marketing, promotions, sale, and/or distribution of OxyContin; failure to warn; defective manufacturing; breach of implied warranty of merchantability; breach of implied warranty of fitness; negligence of drug company defendants in advising defendant Spruill of the indications for,

- 2 -

and the risks and benefits of, OxyContin administration; negligence of defendant Spruill in failing to adequately advise the plaintiff of the indications for, and the risks and benefits of, OxyContin; conspiracy; unjust enrichment; and false advertising.   Plaintiff seeks compensatory damages for, among other things, lost wages, treatment, mental suffering, and other consequences of his addiction, punitive damages, and a declaration that defendants must disgorge all of their profits received from the sale of OxyContin or, alternatively, make full restitution to the plaintiff.  On September 17, 2001, defendants removed the case to this court, asserting diversity, federal question, and federal officer jurisdiction.  On October 16, 2001, plaintiff moved to remand.

## III.   Discussion

The defendants urge numerous grounds upon which this court should find that the action was properly removed and should remain in this court. The defendants argue this court has jurisdiction (1) under 28 U.S.C. §1332 because of the complete diversity of citizenship among the properly joined parties, (2) under 28 U.S.C. § 1331 because of the existence of a federal question, and (3) under 28 U.S.C. § 1442(a)(1) because of the presence as a defendant of individuals acting as officers of the United States. Each of these arguments will be discussed *seriatim*.

### A.   Diversity Jurisdiction

The defendants argue that this court should deny plaintiff's motion to remand because jurisdiction is proper pursuant to 28 U.S.C. § 1332, which provides in pertinent part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

- 3 -

between . . . citizens of different states . . . ." 28 U.S.C. § 1332(a) (2001). While there is no dispute that the amount in controversy exceeds $75,000, plaintiff asserts that there is not complete diversity between the parties because defendant Spruill, like himself, is a resident of the State of Alabama. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996) (overruled on other grounds) (Complete diversity of the parties is necessary to confer diversity jurisdiction on the district court.).   Defendants, however, argue that complete diversity is, in fact, present because defendant Spruill, the only non-diverse defendant, was fraudulently joined in order to avoid the jurisdiction of this court. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (When a party is fraudulently joined to a law suit, its citizenship cannot defeat diversity jurisdiction.).

The Eleventh Circuit has noted, "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998). There are three situations in which joinder is deemed fraudulent, such that the citizenship of the joined party is not considered for diversity purposes. *Id.* The first is when "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *Triggs*, 154 F.3d at 1287. The final situation was defined by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996) (overruled on other grounds), and based upon the requirements of permissive joinder under Fed. R. Civ. P. 20: when diverse defendants are joined with non-diverse defendants as to whom there is no joint, several, or alternative

- 4 -

liability and the claims against the non-diverse defendants have no real connection to the claims against the diverse defendants. *See Tapscott*, 77 F.3d at 1360.  Defendants assert the first and third situations listed above as grounds for their motion to remand, arguing that plaintiff has not stated a colorable claim against defendant Spruill under the Alabama Medical Liability Act and that there is no connection between the claims against defendant Spruill and the drug company defendants.

### 1.    Failure to State a Claim Under AMLA

Defendants argue that plaintiff's cause of action against defendant Spruill is governed by the Alabama Medical Liability Act of 1987, Ala. Code §§ 6-5-540 to -552 (2001). Accordingly, the complaint as it pertains to defendant Spruill must meet the heightened pleading requirements of Ala. Code § 6-5-551, which provides in pertinent part:

> The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act  and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551 (2001).  Defendants argue that plaintiff has failed to meet this burden.

Plaintiff, in response, concedes that his claim against Dr. Spruill is governed by AMLA, but he argues that his complaint is in fact sufficient to meet the AMLA pleading requirements.  The court agrees.  A brief review of the complaint will demonstrate why it is adequate.  In the first paragraph, Brenizer stated:

> On or about April 25, 2000, Mr. Brenizer went to Dr. Wesley Spruill for continued severe back pain.  Dr. Spruill prescribed OxyContin to Mr. Brenizer, which Mr. Brenizer took as prescribed. After taking the first pill Mr.

Brenizer became addicted, and he has gone through immeasurable pain and suffering in trying to cure his addiction and return to his prior lifestyle.  In addition, Mr. Brenizer underwent a kidney transplant on or about May 1, 1993, and thereafter was prescribed Xanax.  Mr. Brenizer advised Dr. Spruill and his staff of all the prescription medications he was currently taking, including Xanax, during his initial office visit with Dr. Spruill.  It has been determined that OxyContin should not be taken in conjunction with Xanax, as it is contraindicated.  Nonetheless, Dr. Spruill prescribed OxyContin to Mr. Brenizer even though he was aware of Mr. Brenizer's current use of the contraindicated drug Xanax.

Comp. at ¶ 1.  Later in the complaint, the plaintiff alleged that "Defendant Spruill inappropriately distributed, prescribed and recommended OxyContin to Plaintiff." *Id.* at ¶ 26. Further, he stated that "Defendant Spruill prescribed OxyContin to Plaintiff. In so doing, they [sic] breached the standard of care in that they [sic] failed to obtain Plaintiff's informed consent.  Specifically, Defendant Spruill failed to adequately advise Plaintiff with respect to both the indications for, and the risks and benefits of OxyContin use."

The Alabama Supreme Court has likened AMLA's heightened pleading standard to the requirement that parties plead fraud with specificity under Ala. R. Civ. P. 9(b).  *See Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993).  The Court described the burden as follows:

Thus, when a plaintiff files a complaint alleging that a health care provider breached the standard of care owed to the plaintiff, although every element of the cause of action need not be stated with particularity, the plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm. If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary "detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff."

*Id. (quoting* Ala. Code § 6-5-551).  Under this standard, it appears as though plaintiff has

sufficiently pled an action against defendant Spruill.  Indeed, other cases from Alabama seem to support this conclusion. *See, e.g., Baptist Medical Center Montclair v. Wilson*, 618 So. 2d 1335 (Ala. 1993).  Significantly, defendants have failed to cite a single Alabama case in which allegations in a complaint against a health care provider such as those made by plaintiff in this case have been found to fall short of the AMLA's pleading requirement.[1]

The court is satisfied that the defendants have failed to show that "there is no possibility that the plaintiff would be able to establish a cause of action" against defendant Spruill. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).  Thus, their claim of fraudulent joinder based on the pleading fails and the action cannot be remanded on that basis.

### 2.  The Claims Against Spruill *vis-a-vis* Claims Against the Drug Companies

The defendants next argue there is not joint, several, or alternative liability and no real connection between the claims against Dr. Spruill and the drug company defendants. In order for the court to sustain that argument, it would have to find that the resident defendant was joined in the action in violation of Fed. R. Civ. P. 20, which provides in pertinent part:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in

---

[1] Defendants argue in a footnote that plaintiff appears to concede that defendant Spruill was not negligent, as that term is defined by Ala. Code § 6-5-484 (2001), when he alleges that, *inter alia*, the drug company defendants failed to warn defendant Spruill of the risks and defects of OxyContin and defendant Spruill was prevented from making a fully informed decision regarding the proper use of OxyContin.  The court finds that these statements are not necessarily inconsistent with a finding of negligence on the part of defendant Spruill.  At any rate, such an argument does not rise to the level of demonstrating that there is no possibility that plaintiff could succeed in state court on his claims against defendant Spruill.  Moreover, the court is unwilling to cripple the American legal profession by requiring that lawyers actually take consistent positions.

respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a) (2001); *see Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996) (overruled on other grounds). The defendants urge the plaintiff's claim against defendant Spruill for malpractice under AMLA has no real connection to the comprehensive products liability claims brought against the drug company defendants.

In *Tapscott*, the Eleventh Circuit was confronted with the same issue, although under a different set of facts. There, a class of plaintiffs asserted claims against various merchants under Alabama statutory law arising from the sale of extended service contracts. *Tapscott*, 77 F.3d at 1355. One of the merchants removed the suit to federal court and moved to sever the claims against it (which were maintained by only two of the named plaintiffs) from those against the other merchants on the ground that plaintiffs' claims against it were improperly joined under Rule 20. *Id.* After plaintiffs moved to remand, the district court, finding that there was no allegation of joint liability or conspiracy between the removing defendant and the other defendants, granted the removing defendant's motion to sever and remanded all other portions of the case to state court. *Id.* The court maintained jurisdiction over the plaintiffs' claims against the removing defendant based on diversity of citizenship. *Id.* at 1360. On appeal, the Eleventh Circuit agreed with the district court's decision to sever the case. *Id.* Particularly, it noted that the district court had correctly found that Rule 20 joinder was improper because there was no allegation of joint liability, no allegation of a conspiracy between the defendants, and the alleged transactions in which the removing defendant engaged were distinct from the alleged transactions of the other defendants. *Id.*

The present action is not *Tapscott* and requires a different answer. Here, there is a single plaintiff who has alleged a number of injuries and damages that he sustained as a result of his use of, and resulting addiction to, a single drug.  The complaint details a number of causes of action, including the negligence of all of the defendants and a conspiracy amongst all of the defendants.  That the drug company defendants' alleged negligence may be different in character, and arise from a different duty, than the alleged negligence of defendant Spruill is not significant.  The plaintiff claims he was injured and incurred damages by reason of his having taken OxyContin.  The alleged injuries would not have occurred but for the alleged wrongdoing of all of the defendants, including the defendant Spruill.[2]  There is no improper joinder under Fed. R. Civ. P. 20 and this argument will not support removal in this case.

### B.    Federal Question Jurisdiction

Defendants also argue the court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Specifically, they argue that both the complaint as drafted and the implications of the plaintiff's lawsuit raise federal questions making resolution proper in this court.

### 1.    The Face of the Complaint

Generally, whether a suit is subject to removal based on federal question jurisdiction is governed by the face of the complaint.  As the Eleventh Circuit has recently noted: "Whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 is generally

---

[2]To the extent defendants argue that plaintiff's claims against the drug company are inconsistent with his claims against Dr. Spruill, the court again notes that it does not find plaintiff's claims to be necessarily inconsistent.

determined by the well-pleaded complaint rule, 'which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987)." *Smith v. GTE Corp.*, 236 F.3d 1292, 1310 (11th Cir. 2001). Defendants argue that plaintiff's conspiracy claim expressly raises a federal question by referencing the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-97 (2001), and stating that defendants have violated certain "state and federal laws and regulations set forth in paragraph 70 . . . ." *See* Compl. at ¶¶ 64-65. The plaintiff's conspiracy count reads in pertinent part:

<u>COUNT VIII</u>
CONSPIRACY

. . . .
64.    The Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, related amendments and codes, federal regulations promulgated thereunder and other applicable state and federal laws enacted for public safety are designed to protect consumers, including Plaintiff, from fraudulent and deceptive practices.

65.    Defendants, collectively, have violated the state and federal laws and regulations set forth in paragraph 70 by, *inter alia,* utilizing unfair and deceptive business practices in the marketing, promotion, sale, and/or distribution of OxyContin. Defendants thereby acted in concert to accomplish some criminal or unlawful purpose or a lawful purpose by criminal or unlawful means related to OxyContin.

66.    As a result of the excessive, inappropriate and unnecessary prescriptions of OxyContin, the Plaintiff has suffered, and continues to suffer damages, including the risk of severe and disabling addiction, actual addiction, the consequences of addiction, drug interactions, and other adverse medical conditions, as well as serious social problems, including depression, the inability to work and lost wages.

Comp. at ¶¶ 64-66.  However, in response to removal, plaintiff asserted that any reference

to federal law was inadvertent and the result of a typographical error in that he accidentally failed to delete such reference from a prior draft of the complaint as he prepared and filed it in state court. Defendants respond that plaintiff's representations should have no bearing on the issue and cite this court's opinion in *Campbell v. General Motors Corp.*, 19 F. Supp. 2d 1260, 1263-64 (N.D. Ala. 1998), for the proposition that "[t]he Supreme Court long ago made clear that federal jurisdiction is to be determined based on the facts and pleadings as they existed at the time of removal and not later."

While the court continues to believe that removal jurisdiction is based on the facts and pleadings as they existed at the time of removal, the court finds this assertion inapplicable in this case. Plaintiff's mistake is clear from the face of the complaint.[3] Paragraph 65 merely states a fact and does not purport to rest the conspiracy count upon the Food, Drug, and Cosmetic Act. In paragraph 66, defendants are charged with violating, *inter alia*, a number of federal laws and regulations that are set forth in paragraph 70 with no further elaboration as to the identity of those laws and regulations. Paragraph 70, the introductory paragraph of plaintiff's false advertising claim, provides "Plaintiff hereby incorporates by reference and realleges each of the allegations contained in all of the preceding paragraphs to this Complaint as if fully set out herein." There is no reference to any federal law in that paragraph.

Plaintiff's post-removal assertion that his reference to federal law was an error does not alter his complaint but merely clarifies the grounds upon which he seeks relief, a

---

[3] One might argue whether these allegations result from typographical errors or from inadvertence. The court suggests the latter may be more accurate. In any event, the result is the same.

- 11 -

clarification made necessary by his obvious mistake, and the resulting ambiguity, in drafting the complaint. Thus, the court finds that the references to federal law in plaintiff's conspiracy count do not sufficiently form a basis for federal question jurisdiction in this case.

### 2.    Federal Implications of Plaintiff's Claims

The defendants raise several other arguments in favor of federal question jurisdiction beyond the face of the complaint and urge that jurisdiction is proper in this court because of the federal nature of plaintiff's lawsuit.

First, the defendants argue that, by bringing his lawsuit, the plaintiff, is actually challenging the labeling of OxyContin and that in order to do so, he must proceed under the Administrative Procedure Act for judicial review of the FDA's approval of OxyContin labeling, *see* 5 U.S.C. § 702 (2001), or file a "citizen's petition" with the FDA pursuant to 21 C.F.R. § 10.30 seeking a change in OxyContin's labeling. The only support provided for this assertion is Judge Posner's statement in *Kaucky v. Southwest Airlines Co.*, 109 F.3d 349 (7th Cir. 1997), that "[w]hen federal law creates an exclusive remedy for some wrong, displacing any remedy that the states may have created for it, a suit to redress that wrong necessarily arises under federal law." *Kaucky*, 109 F.3d at 351. While the court does not quarrel with that statement, it's application in this context is far from clear. In *Kaucky*, the plaintiff brought a claim in state court to recover federal taxes from Southwest Airlines that he was allegedly wrongfully required to pay as part of the ticket price. *Id.* at 350. Although his claim sought recovery under state common law, the court held that he was clearly seeking to recover federal taxes paid, a recovery provided for exclusively under federal

law. *Id.* at 353.

In the present case, the plaintiff's claims do not directly challenge any decisions of the FDA. Instead, his claims sound entirely in common law and appear to rest on allegations of fraud, misrepresentation, negligence, and products liability. Indeed, the plaintiff has not alleged that he was injured by any action of the FDA, such as to invoke the application of the Administrative Procedures Act under 5 U.S.C. § 702. *See Sciolino v. Marine Midland Bank-Western*, 463 F. Supp 128, 130 (W.D.N.Y. 1979) ("The claim of jurisdiction under 5 U.S.C. § 702 can be dismissed out of hand. Such section applies only to a governmental agency's action and the jurisdiction of district courts to review such action. Nothing in the federal complaint speaks of agency action and no review of any such action is sought.") Nor is he requesting that the Commissioner of the FDA take any particular action at all and thereby invoking the citizen petition provisions of 21 C.F.R. § 10.30. Defendants have simply not provided any authority for the proposition that under these circumstances, when a patient is seeking damages for injuries sustained as a result of, *inter alia*, a drug company's fraud and misrepresentation, an administrative procedure or a citizen's petition must preceed any other legal action taken by the injured patient.

Defendants next argue that the plaintiff's failure to warn claim against the drug company defendants provides the court with federal question jurisdiction "because, if permitted to proceed, it could unnecessarily intrude upon and overturn a comprehensive federal regulatory scheme." Defs.' Br. at 8. Defendants, in effect, urge that the plaintiff's claim is preempted by this regulatory scheme, and support this argument with the Supreme Court's holding in *Cipollone v. Liggett Group*, 505 U.S. 504 (1992). In *Cipollone*, the

- 13 -

Supreme Court held that common law actions for damages in state court are comparable to state statutory regulation in that they can have the same preventative effect as such regulation. *Cipollone*, 505 U.S. at 521. Thus, pursuant to the Supremacy Clause, U.S. Const. Art. VI, cl. 2, state common law causes of action can be preempted by federal laws and regulations that are in conflict with the cause of action or occupy the area of law in which the cause of action is brought. *See id.*

Whether the defendants have a valid argument in favor of preemption, however, is not for this court to decide. As Professors Wright, Miller, and Cooper have noted:

> [A]s has been held repeatedly by numerous federal courts, . . . a state-initiated case will not be removable based upon a federal question that is raised by way of defense, even when that defense contends that the plaintiff's state-law claim has been preempted by federal law; that defense therefore has to be determined by a state court if the action is not removable for any other reason. Accordingly, even in certain substantive areas that are heavily regulated by federal law, such as national banking and employer-employee relations, the plaintiff's claim may be one to which federal law does not extend. As discussed at greater length in the next section, a federal preemption defense will be grounds for removal only when the plaintiff's claim falls within the limited category of claims that have been judicially declared completely preempted by federal law. Thus, when the federal court determines that the particular state law claim that has been pleaded by the plaintiff has not been completely preempted, and that federal law exists merely as a defense to what is essentially a state law claim, removal will be denied and the action remanded to state court.

14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3722 (1998). *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13-14 (1983) ("[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the

only question truly at issue in the case."); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Serv. Corp.*, 27 F.3d 911 (3rd Cir. 1994); *Chuska Energy v. Mobil Exploration & Producing, Inc.*, 854 F.2d 727 (5th Cir. 1988); *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940 (6th Cir. 1994); *Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989); *Giddens v. Hometown Fin. Servs.*, 938 F. Supp. 801 (M.D. Ala. 1996). Indeed, *Cipollone* provides no support whatsoever for the defendants' argument in favor of federal question jurisdiction. Federal jurisdiction was founded, in that case, upon diversity of citizenship, and the Supreme Court did not address the issue of jurisdiction as it related to the defendant's preemption defense at all. *Cipollone*, 938 F. Supp. at 509.

Defendants next argue that the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301-97 (2001), completely preempts the plaintiff's state law claim. Unlike defensive preemption, when a state cause of action is *completely* preempted by federal law, federal courts have subject matter jurisdiction over the claim. *Smith v. GTE Corp.*, 236 F.3d 1292, 1311 (11th Cir. 2001). The Eleventh Circuit has recently noted:

> "One corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. at 2854 ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arise under' federal law.").

*Id.* The Supreme Court has recognized only three areas in which state law is completely preempted by federal law: ERISA, 29 U.S.C. §§ 1001-1191c (2001); the Labor Management Relations Act, 29 U.S.C. §§ 141-87 (2001); and certain Indian land grant rights. *See Marcus*

*v. AT&T Corp.*, 138 F.3d 46, 54 (2nd Cir. 1998). The Eleventh Circuit has refused to extend

complete preemption beyond these areas of federal law. That court has given some

guidance to district courts when faced with an assertion by a party that federal law

completely preempts a state action. Recently, the court stated:

> In *BLAB* [*T.V. of Mobile, Inc. v. Comcast Cable Communs., Inc.*, 182 F.3d 851
> (11th Cir. 1999)], which is the only Eleventh Circuit case to address directly
> the application of the complete preemption doctrine outside of the context of
> the LMRA and ERISA, we discussed the various tests employed by other
> courts to determine whether complete preemption exists. . . . Although we
> refused to adopt any particular approach, we summarized the various factors
> considered by other courts as follows:
>
> > These cases reveal a varying emphasis on such questions as
> > whether the state claim is displaced by federal law under an
> > ordinary preemption analysis, whether the federal statute
> > provides a cause of action, what kind of jurisdictional language
> > exists in the federal statute, and what kind of language is
> > present in the legislative history to evince Congress's
> > intentions.
>
> . . . Furthermore, we concluded that the focus of each of the tests was "to
> determine whether Congress not only intended a given federal statute to
> provide a federal defense to a state cause of action that could be asserted
> either in a state or federal court, but also intended to grant a defendant the
> ability to remove the adjudication of the cause of action to a federal court **by
> transforming the state cause of action into a federal [one].**" . . . In other
> words, the "touchstone" of federal jurisdiction under the complete
> preemption doctrine is "Congress's intent."

*Smith*, 236 F.3d at 1311-12 (citations omitted) (emphasis supplied). In analyzing complete

preemption, this court has previously noted the importance of there existing a cause of

action within the federal framework that is alleged to preempt a particular state law cause

of action before complete preemption can be found. *See Campbell v. General Motors

Corp.*, 19 F. Supp. 2d 1260, 1273 (N.D. Ala. 1998) ("[T]he entire concept of federal

jurisdiction over completely preempted state law claims is based on the idea that the state claim is 'converted' into a federal claim over which the court can then exercise jurisdiction."). If no cause of action exists under the federal law that supposedly preempts a state cause of action, it cannot be seriously argued that the state cause of action "arises under" that federal law. Further supporting this conclusion is the fact that in both the ERISA and the Labor Management Relations Act complete preemption contexts, Congress has included a private cause of action within the framework of the preempting law. *See* 29 U.S.C. § 185 (2001) (LMRA); 29 U.S.C. § 1132 (2001) (ERISA).

It is well-settled, and neither party disputes, that the Food, Drug and Cosmetic Act does not allow for or create a private cause of action for its enforcement. *See* 21 U.S.C. § 337(a) (2001) (restricting FDCA enforcement to suits by the United States); *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809-11 (1986); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 788 (3rd Cir. 1999); *PDK Labs. v. Friedlander,* 103 F.3d 1105, 1113 (2nd Cir. 1997); *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995); *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1139 (4th Cir. 1993). Indeed, the court has not been directed to, nor can it locate, any authority whatsoever that supports the proposition that in drafting and passing the Food, Drug and Cosmetic Act, Congress intended to create a private cause of action for the purpose of enforcing its requirements. To the extent that the defendants rely upon *Bernhardt v. Pfizer, Inc.*, 2000 WL 1738645 (S.D.N.Y. 2000), in support of complete preemption, the court points out that opinion did not deal with the issue of complete preemption as it relates to federal question jurisdiction at all, instead dealing exclusively with the doctrine of primary jurisdiction, a separate and distinct issue that the

- 17 -

defendants have not raised. *See Bernhardt*, 2000 WL1738645, at \*2. Because there is no private right of action under the FDCA, the plaintiff's lawsuit does not arise under it. Thus, the FDCA does not completely preempt the plaintiff's claims and federal question jurisdiction cannot be founded upon that basis.

Turning away from the Food, Drug and Cosmetic Act, the defendants next urge that federal question jurisdiction is proper based on the Controlled Substances Act, 21 U.S.C. §§ 801-971 (2001). Although not designated as such, it appears that the defendants make four separate arguments in support of this position: federal law has preempted the field in this area, the plaintiff's claims conflict with federal law in this area, the defendants are in compliance with federal law, and the plaintiff's claims raise a substantial issue of federal law. Defendants' first three arguments can be dealt with summarily. As discussed *supra*, field and conflict preemption, even if established, do not confer jurisdiction on this court. Even though they involve federal law, they at most provide only a defense. Under the well-pleaded complaint rule, they do not appear on the face of the complaint and therefore do not create removal jurisdiction. Similarly, the fact that the defendants may be in compliance with federal law may be a valid defense to the plaintiff's complaint. However, matters of defense do not create federal question jurisdiction and are left for resolution in state court. Defendants' last argument, that the plaintiff's claims raise a substantial issue of federal law, merits some discussion.

The court has already explored one exception to the well-pleaded complaint rule. A separate exception to that rule is that federal question jurisdiction may exist if the plaintiff's claims raise a substantial issue of federal law, even if the plaintiff does not refer

- 18 -

to such federal law on the face of its complaint. This exception was defined by the

Supreme Court in *Merrill Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). In

*Merrill Dow*, the Court held that the exclusion of a private cause of action from the federal

framework served as dispositive notice of Congress's intent to declare that the implication

of that law by a state court lawsuit was not substantial and therefore did not confer subject

matter jurisdiction upon the federal courts.[4] *Merrill Dow*, 478 U.S. at 811-17. Thus, the issue

before this court, based on *Merrill Dow*, is whether the Controlled Substances Act provides

a private right of action under which a plaintiff may bring suit.

Defendants have not provided the court with any decisional authority in which any

court has accepted the argument that the Controlled Substances Act provides for a private

cause of action for its enforcement. The only case uncovered by the court is *McCallister*

*v. Purdue Pharma, L.P.*, 164 F. Supp. 2d 783 (S.D. W. Va. 2001), in which the court held that

the Controlled Substances Act does not provide for a private right of action. *McCallister*,

164 F. Supp. 2d at 793. Further, a careful and thorough review of the provisions of the

Controlled Substances Act itself reveals no intent on the part of Congress to grant to private

citizens the right to bring a cause of action under the Act.[5] The court is therefore convinced

---

[4] Of course, the opposite is not necessarily true. The Court did not hold that the presence of a federal cause of action under the federal framework leads necessarily to the conclusion that the implication of that federal law by a plaintiff's claim always creates a substantial issue of federal law.

[5] This court agrees with the *McCallister* court, which noted:

Factors relevant in determining whether a private remedy is implicit in a statute not expressly providing one are: (1) is plaintiff one of the class for whose especial benefit the statute was enacted? (2) is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? (3) is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for plaintiff? and (4) is the cause of action one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law? *See Cort v. Ash*, 422 U.S. 66, 78 (1975). The Controlled Substances Act fails the second

that there is no federal cause of action under the Controlled Substances Act. As a result,

the complaint does not raise a substantial issue of federal law and jurisdiction cannot exist

on this basis.

## C.    Federal Officer Jurisdiction

Defendants' final argument in opposition to the motion to remand is that subject

matter jurisdiction is proper in this court based on 28 U.S.C. § 1442(a), which provides in

relevant part:

(a) A civil action . . . commenced in a State court against any of the following
may be removed by them to the district court of the United States for the
district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person
acting under that officer) of the United States or of any agency thereof, sued
in an official or individual capacity for any act under color of such office or on
account of any right, title or authority claimed under any Act of Congress for
the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a) (2001). Defendants argue that because the pharmaceutical industry is

tightly regulated and closely supervised by the federal government, the defendants should

be deemed by this court to be "acting under" federal officers for removal purposes.

In regard to removal based on § 1442(a), the former Fifth Circuit noted:

Congress, through 28 U.S.C. § 1442, authorized the removal of civil or
criminal proceedings commenced in a state court against a federal officer or
any person acting under a federal officer for acts performed under color of
office.   The removal statute is an incident of federal supremacy. . . . It
recognizes that the federal government

can act only through its officers and agents, and they must act

_____

condition.

*McCallister*, 164 F. Supp. 2d at 793 n.16.

> within the States. If, when thus acting, and in the scope of their
> authority, those officers can be arrested and brought to trial in
> a State Court for an alleged offense against the law of the State,
> yet warranted by federal authority they possess, and if the
> General Government is powerless to interfere at once for their
> protection, if their protection must be left to the action of the
> State Court, the operations of the General Government may at
> any time be arrested at the will of one of its members.

> *Tennessee v. Davis*, 100 U.S. 257, 263, 25 L.Ed. 648, 650 (1880). . . . Through
> the removal statute, Congress sought to protect the exercise of legitimate
> federal authority from the interference of hostile state courts by providing
> federal officials with a federal forum in which to raise defenses arising from
> their official duties. . . . Congress often has amended the removal statute to
> enlarge the class of federal officials who may claim its protection. These
> amendments have not, however, altered the rationale that underlies the
> removal statute: that federal officers are entitled to, and the interest of national
> supremacy requires, the protection of a federal forum in those actions
> commenced in state court that could arrest, restrict, impair, or interfere with
> the exercise of federal authority by federal officials.

*Murray v. Murray*, 621 F.2d 103, 105-06 (5th Cir. 1980) (citations omitted). The Eleventh

Circuit presently recognizes a two-part test in determining whether § 1442(a) removal is

proper in a given situation. *See Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427

(11th Cir. 1996). First, the defendant must rely upon a defense that arises out of its duty to

enforce federal law. *Id.* Second, the defendant must establish a causal connection

between its actions under asserted official authority and the claims against it. *Id.*

Although the federal common law fails to establish precise guidelines as to how §

1442(a) should be applied, it is clear to the court that § 1442(a) has no application to the

present situation. The court has failed to uncover any authority at all that stands for the

proposition that a private company is permitted to remove any state court action against it

solely by virtue of the fact that it participates in an industry that is heavily regulated.

Defendants cite a number of cases that they allege support the proposition that "[c]ourts have . . . upheld removal of actions against many heavily regulated industries whose practices are closely supervised by the federal government." However, a close reading of the five cases cited by the defendants reveals that there are a number of distinctions between those cases and the case at bar.

In *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992), § 1442(a) jurisdiction was found because the defendant was under the direct control of the Secretary of the Navy and authorized to build submarines under federal contract and on federal enclaves. *Fung*, 816 F. Supp. at 572. The court directly distinguished that case from the present when it noted that "[i]f the corporation establishes 'only that the relevant acts occurred under the general auspices of' a federal officer, **such as being a participant in a regulated industry**, they are not entitled to § 1442(a)(1) removal." *Id.* (emphasis added).

In *Holton v. Blue Cross & Blue Shield*, 56 F. Supp. 2d 1347 (M.D. Ala. 1999), the court found removal based on § 1442(a) to be appropriate, but only because the defendant, a managed-care company, was sued based on its duties as a fiscal intermediary for the administration of an insurance program for the federal government known as CHAMPUS, thereby putting in issue the question of whether it was acting as an agent of the United States when it engaged in the acts upon which it was sued. *Holton*, 56 F. Supp 2d at 1351-52. There is no allegation here that the drug company the defendants have ever had an agency relationship with the federal government.

In *Texas ex rel. Falkner v. Nat'l Bank of Commerce of San Antonio*, 290 F.2d 229 (5th Cir. 1961), the court found that two banks that were sued had properly removed their case

to federal court under § 1442(a). However, in so finding, the court noted that these particular banks, which operated on various military bases, were designated as "depositories and financial agents of the United States" under 12 U.S.C. § 90 and 12 U.S.C. § 265. *Falkner*, 290 F.2d at 231. There is no similar statutory designation operating in favor of the defendants in the present case.

In *Teague v. Grand River Dam Auth.*, 279 F. Supp. 703 (N.D. Okla. 1968), the defendant was sued for, *inter alia*, failing to close flood gates in a dam that he operated. The court found removal proper because the defendant operated the dam pursuant to a license issued by the federal government, which provided that at all times in the operation of the dam, the defendant was subject to the control of the Secretary of War and the Federal Power Commission. *Teague*, 279 F. Supp. at 704-05. In the present case, the defendants are not licensees of the federal government and are not contractually subject to the control of any agent or officer of the United States.

In *Dixon v. Georgia Indigent Legal Services, Inc.*, 388 F. Supp. 1156 (S.D. Ga. 1974), the court held that two lawyers who worked for a corporation providing legal services to indigents could remove a lawsuit against them under § 1442(a). Such removal was allowed, however, based on the fact that the federal government provided substantial funding to the corporation and exerted a high level of control over it (requiring, for example, that the corporation submit its budget to the federal government for approval and that its executive director answer directly to the Director of Southeast Regional Legal Services of the Office of Economic Opportunity, an undisputed officer of the federal government). *Dixon*, 388 F. Supp. at 1158-63. The level of control that the federal government exerted over the

corporation for which the attorneys worked in *Dixon* simply does not appear to exist in the present case.

After reviewing the record and the applicable case law, the court is convinced that the defendants have not carried their burden in demonstrating the propriety of removal under 28 U.S.C. § 1442(a). They have neither shown that they have a duty to enforce federal law, nor have they established a causal connection between their actions under asserted official authority and the claims against them. Further, the court is unaware of any persuasive authority that supports the defendants' position. As a result, the court finds that 28 U.S.C. § 1442(a) does not provide a basis upon which to rest federal question jurisdiction in this case.

## IV.   Conclusion

Based on the foregoing, the court finds that federal subject matter jurisdiction was lacking at the time that this case was removed to this court. Therefore, pursuant to 28 U.S.C. § 1447(c), this case will be remanded to the Circuit Court of Tuscaloosa County whence it was removed. A separate order will be entered in conformity with this opinion.

Done, this **2/0t** of December, 2001.

Edwin L. Nelson
United States District Judge

- 24 -